UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VENITA MILLER,<br><br>    Plaintiff,<br><br>    v.<br><br>GREENLEAF ORTHOPAEDIC<br>ASSOCIATES S.C. et al.,<br><br>    Defendants. | No. 10 C 5867<br>Judge James B. Zagel |

**MEMORANDUM OPINION AND ORDER**

Venita Miller ("Miller") sues Greenleaf Orthopedic Associates ("Greenleaf"), her one-time employer for engaging in race and disability discrimination when it terminated her. Miller also sues both Greenleaf and its office manager Linda Miller ("Linda") under one statute which permits individuals as well as employers to be sued for violating federal constitutional rights and the statute defining the rights of federal jurors. Lastly Greenleaf is sued under a federal statute barring employer interference with federal jury duty of an employee.

Greenleaf seeks summary judgment arguing that Miller had "numerous performance and credibility issues [and]…was terminated after it was believed that she was absent from work due to jury duty and it was learned that [Miller] was not in fact at jury duty. In light of [Miller's] previous problems, this incident was the last straw of Greenleaf."

1

There is a crucial[1] threshold issue. Does judicial estoppel (as it arises in bankruptcy cases) preclude the claim for money damages?

Judicial estoppel prevents a party from abandoning a prior legal ground on which it prevailed in a prior litigation. See *Zedner v. United States,* 547 U.S. 489, 504 (2006). If you claim X in a prior case and you secure some legal benefit as a result, you cannot assert Not X in an effort to win another case. If you deny in a litigation that Fido belonged to you and thus escape liability for Fido's mauling of a child, you will be precluded from seeking compensation for unnecessary police shooting of your beloved pet after you had pulled the child away from Fido.

A common application of judicial estoppel doctrine arises when a debtor files for bankruptcy protection and asserts, under oath, that he or she has only the assets listed on the standard declaration of assets. The failure to reveal that debtor has a pending litigation is a declaration that this asset does not exist. The debtor's pursuit of such an undisclosed claim may be foreclosed by judicial estoppel. The legal benefit the debtor receives is the judicial approval of a reorganization plan reducing various debts even if such approval is temporary and the bankruptcy court never discharges debts and dismisses the case. The general rules governing these

---

[1] I say "crucial" because there is good reason to believe that there are genuine issues of material fact regarding some or all of the claims. All sides to the factual dispute have some ammunition (none of it overwhelming) to support some, if not all, their claims and defenses. Considering the reality that credibility of witnesses is the primary component of any verdict or finding in this dispute, it would be appropriate to consider the testimony of the witnesses even if some of the claims to which it is addressed are no longer in the case. Whenever a narrative involves a claim about a "last straw", much of the past will need to be heard. Miller's narrative too covers a lot of ground.

2

cases is set forth in *Love v. Tyson Foods, Inc.* 677 F.3d 258 (5th Cir. 2012). *See also Williams v. Hainje,* 375 Fed.Appx 625, 2010 WL 1936269 (7th Cir. 2010); *Esparza v. Costco Wholesale Corporation,* 2011 WL 6820022 (N.D. Ill).

A District Court has discretion in deciding whether to apply judicial estoppel because the acts which would ordinarily constitute grounds for estoppel may be excused under the general rubric of "inadvertency." To reach a decision the District Court is entitled to determine facts after a hearing such as the one conducted in two separate sessions in this case.

The material facts are, with one exception, not in dispute. It is the inferences to be drawn from them that are disputed. The inferences I will make depend upon the circumstances of events and the credibility of Miller and others whose testimony I heard.

Miller was fired by Defendants on 18 September 2009. Thirteen days prior to the firing, she consulted with bankruptcy attorneys and filled out a questionnaire of the sort commonly used by personal bankruptcy lawyers. After employment termination she did not proceed with a petition in bankruptcy because she would likely not have the money to pay for lawyers and the costs of proceeding after having lost the income from her job. Miller essentially postponed the decision to file to a future date. The document entitled "Confidential Bankruptcy Consultation

3

Questionnaire for David M. Siegel & Associates" ("Form") is in evidence albeit under seal except for that portion about pending litigation which is in the public record. The present litigation is not listed because on 9 September 2009, Miller had not been fired.

This lawsuit was filed on 15 September 2010. Discovery proceeded with document discovery and interrogatories. On 12 April of the following year, Miller was deposed. All this occurred before Miller filed a bankruptcy petition.

On 4 June 2011, Miller telephoned her bankruptcy counsel and informed their office that she had a wrongful termination case. Someone[2] in the office then inserted, in the appropriate place on the Form, " v. Greenleaf Orthopedics (wrongful termination)." The  stands for "debtor." The Form of 5 September 2009 became the revised Form of 4 June 2011.

The petition for a Chapter 13 bankruptcy was filed on 19 July 2011. The Greenleaf lawsuit was not listed as an asset on Schedule B of the official form for a voluntary petition in bankruptcy. David Siegel testified that the failure to include the lawsuit on Schedule B was an error made in his office since the lawsuit was noted in the Form.

What followed was routine practice. There was a Section 341 hearing at which time the trustee (or his representative) meets with creditors (if any show up)

---

2 According to the testimony of David Siegel, that person would be an attorney in his office.

and the debtor. Ordinarily, as happened here, the hearing results in a recommendation from the trustee to the bankruptcy judge about whether, or to what extent, the debtor should be discharged of her debts. Characterizing a 341 hearing as a "Meeting of creditors and equity security holders" is often a misnomer while creditors and security holders have the right to be there and ask the debtor questions under oath, creditors frequently decline to appear. The purpose of the meeting is primarily for the trustee to examine the debtor under oath to confirm that the filing is made in good faith (i.e. is not hiding assets) and that the debtor has provided adequate and accurate financial documentation (if not, the trustee will ask the debtor to file further documentation and hold another Section 341 hearing after reviewing it).[3] The purpose of a 341 hearing is to enable the trustee to make an informed recommendation to the bankruptcy judge concerning discharge. There was a Chapter 13 plan of 26 September 2011 that was confirmed by Judge Doyle on 7 October 2011.

There was a serious flaw in the bankruptcy process and it arose because of something that Miller did not do at the 341 hearing, to wit, tell the trustee about the Greenleaf lawsuit. The trustee did put Miller under oath and asked a question which should have elicited a positive answer about the existence of the lawsuit. Miller answered "No." The answer is untrue.

---

3 In Chapter 7 cases, trustees also advise the debtor of the consequences of seeking a discharge in bankruptcy.

None of this is to have been known to either counsel in this case. On 14 November 2011, Miller sat for the second session of her deposition which dealt almost entirely with the facts surrounding the firing. Late in the deposition defense counsel asked about Miller's current financial condition presumably because Miller had found other employment at Stroger Hospital. She answered her condition was not where she wanted "it to be right now…" Miller was asked if she was aware of wage assignments. She replied "Right now I'm in Chapter 13. And I just pay my trustees. And if that is a wage assignment, that is a wage assignment currently." This answer led to the following exchange.

    Q. When did you file for Chapter 13?

    A. In July.

    Q. July of 2011?

    A. Yes.

    Q. Did you disclose your lawsuit against Greenleaf as an asset in your bankruptcy petition?

    A. No.

On November 17, Miller filed amended Schedules in Bankruptcy proceedings.

There is no quarrel that the effect of signing and filing the petition with its schedules is a sworn denial that Miller had a lawsuit pending, a lawsuit that might

6

recover assets for the benefit of creditors. Nor is there a question that Miller gained some legal benefit since the Bankruptcy Court granted the petition approving the plan. There is no doubt that Miller concealed nothing from Bankruptcy counsel. There is no reason to bar Greenfield's argument that estoppel was waived in its answer; estoppel was pled as an affirmative defense, and I am unwilling to preclude its use because the particular type of estoppel was not specified.

What drives the dispute here is (1) the factual significance of Miller's testimony under oath that this lawsuit did not exist, i.e. her state of mind, (2) the legal significance of her lawyer's error and (3) the nature of the remedy if Miller's conduct cannot be considered inadvertent.

When judicial estoppel is applicable, the initial remedy is to bar the plaintiff from collecting on her claim. But, should the monetary remedy simply be dismissed? The answer seems to depend on the status of the bankruptcy proceedings. If it is irrevocably closed, then the claim is dismissed. This was the holding in *Cannon-Stokes v. Potter,* 453 F.3d 446, 448 (7th Cir. 2006). A variation on this theme is found in *Williams v. Hainje,* 375 Fed.Appx. 625, 2010 WL 1936269 (7th Cir.) (There was no bankruptcy trustee to take on the claim since the bankruptcy petition was dismissed.)

7

Some persons who conceal an asset and get caught have argued that the claim should not be dismissed if the bankruptcy proceeding can be reopened. The Circuits are divided on this point. *Compare Burnes v. Pemco Aeroplex,* 291 F.3d 1282, 1288 (11th Cir. 2002) (reopening bankruptcy is a "so-called remedy [that] would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of…assets.) *with Dunmore v. U.S.,* 358 F.3d 1107, 1113 (9th Cir. 2004) (reopening the bankruptcy is "a permissible alternative to judicial estoppel that prevents [the bankrupt person] from deriving an unfair advantage if not estopped.") The rationale for permitting the case to proceed is that the damages, if any, will go to the bankruptcy trustee. A ruling that precludes a trustee from acquiring funds to pay creditors more speedily or pay them more money than they can reasonably expect to receive from the current plan may harm creditors.[4] The District Courts in this Circuit have not found reopening bankruptcy to be an appropriate remedy. See *Esparza v. Costco Wholesale Corporation,* 2011 WL 6820022 (N.D. Ill) (collecting cases).

The ability to have bankruptcy reopened is, in this district's Bankruptcy Courts, not much constrained. An informal survey of some Bankruptcy Judges here suggests that Chapter 7 trustees (and not the bankrupt) are the frequent source

---

[4] The trustee can take steps to control the case even to the point of settling it without the consent of Miller. The trustee can abandon the case, and if that occurs, Miller cannot pursue it. There are reasons why a trustee might conclude that it would be best to let the case go forward when the cost of litigating it may be zero as it might well be in litigation where a prevailing plaintiff's fees and costs can be paid by the defendant. Nothing in the law precludes creditors themselves from realizing on the claim after its discovery.

8

of petitions to reopen. This practice has been noticed in the past. *Kane v. Nat'l Union Fire Ins. Co.,* 535 F.3d 380, 384-85 (5th Cir. 2008). The trustee wants to acquire a previously undisclosed asset to benefit the creditors and the bankrupt will rarely have the incentive to seek reopening (for which a filing fee must be paid). Reopening is largely confined to Chapter 7 cases because Chapter 13 cases are closed when the Plan is consummated, and this usually takes quite a while. A trustee in a Chapter 13 case does have the option of seeking control of the asset, converting it into a Chapter 7 asset. A Chapter 13 petitioner keeps control of the estate; a Chapter 7 trustee controls the estate. Such an action leaves the trustee with the power to settle the case on terms providing enough funds to convert the plan to a 100% payout to creditors on a fast schedule. In Chapter 7 cases, the discovery of an undisclosed asset like the one here might lead a trustee to deprive the bankrupt of the benefit of whatever discharge of debts was granted by the Bankruptcy Court. This can occur if there is deliberate concealment of the asset.

In *Cannon-Stokes,* the Seventh Circuit noted that all six of the appellate courts to have considered the question have held that a debtor in bankruptcy who denies owning an asset, including a chose in action, cannot collect on that asset after bankruptcy ends. Our Court of Appeals joined them.[5]

---

[5] The opinion offered no holding on the issue of reopening bankruptcy. It did disapprove of the conduct of the appellant who claimed, in disclosing her assets, to have overlooked an asset which she believed was worth three times the value of the debts she had discharged.

9

A doctrine that induces debtors to be truthful in their bankruptcy filings will assist creditors in the long run (though it will do them no good in the particular case) and it will assist most debtors too, for the few debtors who scam their creditors drive up interest rates and injure the more numerous honest borrowers. Judicial estoppel is designed "to prevent the perversion of the judicial process (internal citations omitted).

Judicial estoppel adopts a policy of discouraging the concealment of assets by petitioners in bankruptcy. Trustees do not conceal assets for personal gain and their desire to reopen a closed case is consistent with this policy. It is easy for them to reopen a closed case.

The final fact pattern is that of an asset discovered or added to the schedule while the bankruptcy proceeding is not closed. This is the case here. It is not unusual in Chapter 13 cases which often result in long term payment plans which are not carved in stone. They can be modified as circumstances change, usually the circumstances in which the debtor finds herself having, say, more or less income or assets or a medical emergency. There are no cases enunciating rules that

---

And it noted that if she were really making an honest attempt to pay her debts, then as soon as she realized it had been omitted, she would have filed an amended schedule and "moved to reopen bankruptcy, so that the creditors could benefit from any recovery." She did none of that. This is a hint that reopening would be a permissible alternative to judicial estoppel as the 9th Circuit so held. But the words of the opinion can be interpreted as a demonstration of why the appellant's claim of overlooking an asset was not credible.
    More to the point is a nonprecedential disposition in *Rainey v. UPS, Inc.,* 466 Fed. Appx. 542,544 (7th Cir. 2012) where the Court observed that "as long as bankruptcy proceedings are ongoing…a Chapter 13 debtor can inform the trustee of previously undisclosed legal claims, and unless the trustee elects to abandon that property, the debtor may litigate the claims on behalf of the estate and for the benefit of the creditors without court approval." *Id.* at 544.

10

restrict adding new assets to an open Chapter 13 Plan or a Chapter 7 estate.

The deterrent to lie which is embedded in the doctrine of judicial estoppel may not be significantly attenuated by allowing the failure to disclose to be repaired. This is so because a deliberate liar must face the risk that waiting to disclose might leave him in the position of asking for reopening which may not be granted. This seems a logical ground to confine judicial estoppel of any pursuit of a chose in action to cases in which the bankruptcy proceedings are and remain closed. Whether there will be proof (or disproof) of this proposition is a prediction I am not inclined to make.

The legal significance of the bankruptcy lawyer's failure to list an asset that was contained in the lawyer's own work papers is clear. The petition with its schedules is signed by Miller and not just her lawyer. Based on her testimony, I conclude that she signed the papers because she accepted her lawyer's implicit assurance that it was the proper document to be filed. There is no deliberate lie in these papers but that does not do her much good. "A lawyer is the client's agent, and the client is bound by the consequences of advice that the client chooses to follow." *Cannon-Stokes,* 453 F.3d at 449. So, Miller is, in legal essence, the person who prepared the petition herself and left out the wrongful termination claim.

This may not be inconsistent with inadvertence. But there are reasons to conclude against inadvertence. She knew about and participated in some of the proceedings of the case. Moreover, this is, from her point of view, a wrongful firing, not the kind of event that a person can easily put out of her mind as one might put out of mind that a truck crushed her parked car when she was at work. There is, often, implicitly or explicitly, a serious personal insult in the act of firing in addition to the economic loss. Yet, the act of signing a fairly technical legal paper on an unfamiliar form by a person who, both testimony and deposition shows, had real-life problems resulting from the loss of a job. I might be willing to conclude that this signing, considered alone, is an inadvertent act.6

The pillar which supports the Greenleaf motion is the sworn in-person oral denial of the existence of this case at the 341 hearing. It is difficult to conceive of this as "inadvertent" on its face. Miller contends that two elements of the procedure show that her answer could be, and was, inadvertent. First it is said that

---

6 One of the escape clauses for these omissions is the absence of motive to conceal the claim of wrongful termination. There was a motive. Failing to tell the trustee or the court could well influence the content of the plan and the speed with which it was confirmed. That Miller may not have perceived that she had a motive does not help her. As I read the cases, it is the existence of a motive not the consciousness of it in the mind of the debtor that counts. See *Eastman v. Union Pacific R.R. Co.,* 493 F.3d 1151, 1159 (7th Cir. 2007) (The ever present motive to conceal legal claims and reap the financial rewards is undoubtedly why so many of the cases applying judicial estoppel involve debtors-turned-plaintiffs who have failed to disclose such claims in bankruptcy.) Cases in which there appears to be no profit to a plaintiff or petitioner do support that notion that failure to disclose was inadvertent.

the question was not clear enough for Miller to understand what it was she was being asked about and, second, that this examination was conducted at a fast pace by a trustee's employee who was following a familiar routine.

The quality of the recording of the 341 hearing is too poor to permit a conclusion of the precise nature of the question. Miller argues that the question used unfamiliar words, i.e. litigation, which might not be readily understood by her. The trustee testified that she generally asks this question using words which a non-lawyer would understand. She asks whether or not the petitioner has any foreclosure or litigation and asks "are you being sued or are you suing anyone?" I credit this testimony. Implicit in Miller's position is a suggestion that the questions come quickly after one another and elicit a series of "yes" answers and "no" answers. We know this is true because you can hear the answers (not the questions) clearly on the recording. The particular "No" that matters here was uttered in the middle or toward the end of a series of "no" responses.

I am not persuaded that Miller offered an inadvertent answer. The most the evidence will allow is that there is a dead heat between the two sides on "inadvertence" and ties go to Greenleaf because Miller bears the burden of proving inadvertence. So the facts can establish judicial estoppel.

Enforcing judicial estoppel is an equitable remedy (*Johnson v. ExxonMobil*

13

*Corp.,* 426 F.3d 887 (7th Cir. 2005)) and therefore one which is granted at the discretion of the court. Equity, in this case, is not on the side of foreclosing the wrongful termination claim of Miller. The issue has arisen during the pendency of an existing bankruptcy proceeding, and incorporating the value of this lawsuit into the Chapter 13 plan is neither difficult nor unfair to Greenleaf. In this case, I weigh the equitable and patent interests of creditors against the equitable interests of Greenleaf. The interests of Greenleaf would be more substantial if not for Miller's intent to pursue non-monetary remedies for the termination if it is proved to be wrongful. The case will have to be tried and many of the costs of litigation borne even if I were to dismiss the demand for money damages. I do not put the interests of Miller herself in the balance on this issue.

The motion to dismiss the demand for monetary compensation is denied. I will request the Chapter 13 Trustee to declare whether he wishes to take steps to gain complete authority over the monetary claim or to otherwise ensure that the creditors' interests are protected.

ENTER:

James B. Zagel
United States District Judge

DATE: September 13, 2012